1855 from the District of North Dakota. Selective Way Insurance Company v. CSC General Contractors, et al. Mr. Page, if you're ready, you may proceed. Thank you, Your Honor. May it please the Court, Fred Page on behalf of Appellants, CSC General Contractors, and CSC General Contractors, Indy, LLP. Your Honors, this case comes to a summary judgment from the District Court for the District of North Dakota finding no coverage for CSC under a commercial general liability insurance policy issued to one of its subcontractors by the Appellee Selective Way Insurance Company. Now, Your Honor, CSC submits that this appeal is really about the scope of the relief to grant CSC at this time, as there seems to be no dispute between the parties after the briefing about whether the error in entering summary judgment in favor of Selective. Selective did not try to defend the Court's reasoning in its brief, instead arguing to affirm on alternative grounds and claiming that it's the judgment on appeal, not the Court's reasoning. Counsel, let me ask you about that. So, you did not file a cross appeal, and you did not contest any of the errors that were assigned by CSC to the District Court's judgment below, and that is a unique approach for an insurance company in the sense that this is an appeal from a judgment finding no coverage on its own policy, but that's the approach Selective chose. They did not bother to address our coverage arguments, our six different defenses that we put forth, or even assert that the arguments that were made were in any way incorrect. So, Selective instead argued that the District Court erred in declaring that CSC was an additional insured under the policy, and, you know, they, I'm sorry, Your Honor, Selective took the position that judgment should be affirmed on this alternative ground. Your Honor, the history of that additional insured issue goes back to the initial denial that Selective issued in this case, you know, approximately within a week of getting notice of it from CSC, and the argument, Your Honor, fails at this time because it's not properly before the court. Selective sought a declaration from the District Court that CSC was not an additional insured under its policy. CSC obviously contested that, and the District Court agreed with CSC, issued a judgment and a declaration that, in fact, yes, CSC is an additional insured under the policy. Now, Selective chose not to cross appeal or take a direct appeal from that declaration, and that was a key issue in the case. They now seek to take away that status to CSC, and, Your Honor, that would significantly limit and reduce the rights that CSC currently has under this declaration. The relationship between CSC and the subcontractor who is the named insured for Selective is Glossen. That relationship goes far beyond the one contract that's at issue in this case. The testimony in the record below was that there were over a hundred other contracts during the same time frame for concrete installation. Now, all of those other contracts were completed during the same 2011 to 2013 time frame, which is prior to the commencement of the policy that's at issue on appeal. Well, what Selective is trying to do is take away CSC's status as an additional insured for any damages that have occurred on any of those projects, not just this one. Now, what Selectives argued is they just want to affirm this judgment, but that is not the ramification of what they seek, and that is the definition of seeking to enlarge its rights and lessen or minimize the rights of the adversary. If they wanted to do that, they needed to cross appeal from the additional insured declaration, and they didn't do it. Now, Your Honor, they did not even bother, as we mentioned, to address the coverage issues, which have essentially conceded... Well, counsel, let me ask you. You were very kind to... I misstated my question, but you understood what I meant. So, let me follow up on that. So, have they conceded the issues that they did not contest? Your Honor, certainly the case law supports that if an appellee chooses not to brief or even bother to brief the issues that are raised, that it can be wavered by the appellate court in this situation, this court. They have not contested the issues such as the estoppel arguments that were made, the prejudice that was argued and demonstrated that resulted to CSC by Selectives' delay in asserting their coverage defenses for two years, and that delay spanned the entire period that CSC defended the underlying cases, and there were CSC. You had the third-party action between CSC and the subcontractors, one of whom is Glossin, who was Selectives' named insurer. They installed the concrete, but they didn't supply the concrete. There was another subcontractor who was providing the materials. Glossin's contract was for labor only to spread that which way they were provided from other parties. So, the estoppel issue, Your Honor, in the prejudice that we've shown as those cases actually liability had been stipulated, they've gone through arbitration, they've had final results, all of that had concluded before Selective decided to notify CSC of its new coverage defenses and all the exclusions it wanted to then assert, and the district court did permit that, and the district court then went into those exclusions. Your Honor, one of the other issues that caused error in Selectives' defense, this was not its doing, was the district court ruled there was no occurrence here under North Dakota law, and they did so on the basis that this was faulty workmanship and some of the historical cases that have held faulty workmanship cannot constitute an accident or an occurrence in that context, but the district court unfortunately relied on overturned North Dakota law, although it is overturned in the K&L case, which was a plurality split decision opinion, but the key principle there is the majority decision for North Dakota in K&L by the North Dakota Supreme Court is that, yes, faulty workmanship can be an occurrence for purposes of CGL insurance, certainly when it causes property damage and it's a subcontractor is involved as here because you have CSC as the general contractor and Glossen as the subcontractor. Your Honor, one of the things that we've seen that Selective also did not argue is anything about the arbitration award. CSC has an arbitration award against Selective that the arbitrator found, I'm sorry, against Glossen, that the arbitrator found the subcontractor Glossen was responsible for the damages to the parking lot at issue. They want to keep arguing, no, it was the specification, it was a 3,000 versus 4,000 PSI issue. Your Honor, that is completely a red herring as that issue has been resolved with finality as the arbitration found. Moreover, Your Honor... What words did the arbitration award, pardon my ignorance, but what words did they use to describe the cause, the additional water in Glossen and that? Did they say contributory, a cause, a contributing cause? Do you know what kind of words the arbitration used the final award? Your Honor, the arbitration award was more than the nature of a general verdict. It found that Glossen was responsible for all damages sought by ACME tools against CSC and the underlying case. It didn't address a cause kind of analysis? It did not specifically address, certainly that... Your comments spark that in me, go ahead. Your Honor, certainly those issues were heavily litigated. They've been discussed at length in the positions that are on record. I understand. This court, and there were a series of issues that had to do with adding water by Glossen. There was also other issues that involving power trawling involved... But you say the arbitration award doesn't address those specifics. I heard that... It does not address those specifics, but it does find, and everybody acknowledged, that only the fault of Glossen would trigger the indemnity obligations. So, if this case were relied upon, or if the damages were the cause of the specification by CSC, there would be no indemnity owed. Here, by finding indemnity is owed for all the damages, the arbitrator resolved the issue of who was at fault for those damages. Your Honor, one of the key points also to make is that ACME sought more than damage to Glossen's in the briefs, Your Honor, that go through the idea that furnishing materials to one subcontractor does not make those materials the work for policy purposes of the subcontractor who then installs them. Here, the cement was premixed. It was provided to Glossen. They had water added to it, apparently to make it easier to spread, and that caused problems in the North Dakota weather. And that caused significant problems, obviously, very shortly after it was installed, and that is why we are seeking, at this point in time, relief from Selective as Glossen's insurer. Your Honor, there's also one of the key points that the court, the district court, did not focus on was the severability provision, and that severability provision in this case, Your Honor, separates the insured's interest of CSC and Glossen. CSC is an additional insured under the blanket additional insured endorsement. That issue was resolved, and we do not think that issue has been properly preserved. The severability provision makes clear that except with rights that are specifically reserved to the first named insured, the insurance applies separately to each insured against whom claim is made or suit is brought. That necessarily means that when analyzing the exclusions, including the Your Work exclusion, that CSC is the insured for purposes of that exclusion. CSC is the insured, and Glossen is its subcontractor, and the Your Work exclusion here has a specific subcontractor exception that applies to make all of the damages at issue in this case fully recoverable. Those damages were caused by Glossen as the arbitration award found. Those damages are to work, as we would use the phrase, of CSC, but they are accepted from the exclusion by virtue of the fact that they were caused by a subcontractor's work itself. Your Honor, if there are no further questions, I'd like to retain the rest of my time for rebuttal. Very well. Thank you, Mr. Page. The court will hear from Mr. Lulich. Good morning, Your Honor and members of the court. I'm Joseph Lulich. I represent Selective Way in this case, which is really a very simple case involving a construction project which consisted of a parking lot, and the parking lot was installed by Glossen, who is Selective Way's name insured. They're the party that paid the premium, and it was installed roughly in the fall of 2013, and the problems began manifesting themselves sometime in the spring of 2014, long after the project had been completed. Now, that's the key fact, and that's what triggers this dispute, and that's what triggers policy and its terms and conditions. The district court ruled that CSC was insured simply because there was a liability on the policy, but there are more prerequisites to being an additional insured policy than just the contract between Glossen and CSC, and the key prerequisite here is that the liability has to be caused by ongoing operations of Glossen. Counsel, in your first denial letter back on December 11, 2015, you say not named as additional insured, and then you don't raise that again until on appeal here? Do I understand the record right? Oh, no, Your Honor. That was raised in the court below. It was raised on a summary judgment motion in the district court, in the federal district court of North Dakota, and the district court ruled that CSC was an additional insured, and so we defend the judgment, which was in favor of... But you didn't cross appeal, right? We did not. That's the key fact, and in order for CSC to be an additional insured, it has to have a contract with Glossen, which it does, and the liability that it claims indemnity or defense must be caused by an ongoing operation. This was not one. This was not an ongoing operation. This is not a case where liability was assessed on anybody for an ongoing operation. It was work that was completed. Now, this contract is really quite clear in what it provides. It provides coverage while the project is ongoing, so both claims of property damage and liability to both Glossen and to CSC, but once the project is completed, once the operations are no longer ongoing, coverage terminates as it relates to CSC, in this case, the general contractor, but it continues to Glossen, but only for bodily injury and property damage that is not related to the work. In other words, not fixing the work. This contract is really simple to understand, and it complies with all the laws and case law regarding this issue. The district court cited that law at length in its memorandum, which is basically these insurance contracts, these comprehensive general liability policies are not surety bonds. They do not provide coverage for anybody, whether it be CSC or Glossen or anybody else who is named or added as an additional insured for damage solely to the work, and that's what happened here. The contract started to become unglued, if you will. I'm sorry. The parking lot started to become unglued. It came apart. The chip broke. It was a bad piece of work, and it needed to be fixed and repaired, and it was, but it didn't cause damage to any other property, and it didn't cause any injury to anybody, so when the district court made its decision, it got to the right place. There were some mistakes made along the way, but it understood clearly the purpose of this contract and what it does and doesn't cover, and it doesn't cover the cost to replace bad work by a contractor, and it doesn't cover the cost to repair work that is only, that the only property damaged is the work. It covers liability for other property and for personal injury. We cited some cases that define these words. I don't think we need any cases to define the word ongoing. We use it every day in our language. Strife in the Middle East is ongoing. It doesn't ever seem to end. The ballgame is still going on. There's no final score yet. These words are used very, very commonly, and they don't really need a whole lot of judicial analysis. They're plain, everyday words, and CSE isn't insured, additional insured under this policy, but only for liability that's caused by an ongoing operation, and this operation had long since been completed. The claims of CSE here are as an additional insurer. That's all they can ever be. They're not even insured. They didn't pay a premium, and the policy, therefore, does not cover them in perpetuity for anything relating to this project that they entered into, nor any other project. It covers them only during the work being performed, and it only covers them while that is ongoing, not after it's been completed. The rest of the policy illustrates that, Your Work and Your Product exclusions apply to GLOSSEN because GLOSSEN stays as an insurer after the project is completed, so those exclusions have to exclude the Your Work, the project itself, as it applies to GLOSSEN. There's no exclusions that would come into play to CSE because once the project is completed, the operation is no longer ongoing. They're done. They're not covered under this policy, and that's the whole gist of the contract. That's the whole meaning of the contract, and it falls right in line with all the cases who have said over and over again that these policies are not surety bonds. This policy doesn't compete with the surety bond your honors, and so therefore these types of contracts do not provide the coverage that CSE is requesting. You didn't respond to the estoppel argument, so let me finish. Are you effectively conceding then that the only issue before us is the additional insured question? I didn't respond to the estoppel argument because it wasn't proven at the district court level, and it certainly isn't proven here, and there's no basis for it, but we believe the judgment... Don't you have to respond to it, or else you're going to be deemed to have conceded that? The estoppel argument is only to the extent that we can't argue other exclusions in the policy, and even though we incorporate all our... That's what I thought I just heard you arguing, was other exclusions. What I was stating as it relates to other exclusions, your honor, was the reason why those other exclusions only can apply to Glasson, and are only needed to apply to Glasson, because CSE status as an insured ends at the end of the contract, and if it doesn't, then you have to rewrite the rest of the contract. That's why I pointed out the existence of those exclusions, what they mean, and what their purpose is, and how that absolutely ties into the fact that CSE's status ends with the project. Because those exclusions only apply to Glasson. Can I ask this a different way, and this is why I was confused before? Sure. Going back to your first letter, you had two grounds listed in your first letter of time. North Dakota's very strict on this. They've got very little law, but it's very clear. What ground have you stuck with throughout all this? CSE is not an additional insured under this contract, because the... No, I thought for two lawsuits and several years you didn't do that. I was confused about which lawsuit at the time I asked earlier. Your honor, that is not the case. The first and foremost reason for denial would be because CSE was not an additional insured, because the project had been completed, the operations were no more ongoing, and for the other reasons stated in the prerequisites for being an additional insured, which are your product and the premises that... Well, now counsel, your initial denial letter has two things. Not an additional insured, and Glasson had no contractual duty of defense or indemnity. Now, tell me which of those you maintained at all times since December 2015, because I think that's what the DEM case relies. Even the district court says that. So help me, which one of those two have you hung with the whole time? CSE is not an additional insured, your honor. Not to this point. I thought there were three years or some long period of time you didn't use that at all, and you went through lawsuits and arbitration, and you can correct me on my exaggeration there where I'm exaggerating. Maybe it was one lawsuit and one arbitration, but for what period of time did you not defend, not use those grounds? I don't have the dates, your honor, but we have always denied this claim to CSE, the appellant hearing, based on the fact that they are not an additional insured under this contract, and we are to stop from not asserting that here this morning as we do and in our brief. The other arguments really are moot because when you look at this contract as a whole, it provides coverage to both Glasson and CSE for the work while the project is ongoing, but after that project has been completed, CSE gets no coverage whatsoever for anything, and Glasson gets coverage for damage to other property and injuries to third parties, and as a result, the district court's ruling and judgment in our favor should be affirmed even though how the district court got there may have contained some error, but he got it right. The judge got it right. The district court ruled that there is no coverage and that judgment should be entered in favor of Selective Way, which it was, and of course, based on the East Circuit internal procedures, Supreme Court, and the East Circuit case law, we can ask for affirmance on any grounds. We don't challenge a... We want the judgment affirmed. We don't want the reasoning of the district court affirmed, and so we provide the court with the reasoning behind that. There's also some other prerequisites which have no application here. Your product doesn't apply. It has to be something that's a personality and not realty. A parking lot is a real property, not personality. Yeah, but wasn't the concrete and the water their product? The concrete and the water was not a product. It was a material used in the work, and by common language, a parking lot, which becomes undone, was the work of Glasson. They provided the labor. They put the concrete in. They poured it. They spread it out. They built the parking lot. That parking lot is a piece of work. It's not a product by any definition, and I would point out to the court that your work and your product are used distinctively in this contract. They're defined differently, and in no way, shape, or form could a product be a piece of realty. No one drives by and says that's a good product or a parking lot. Yeah, but can't product be material furnished in connection with, and isn't the concrete and the water material furnished in connection with? Well, the concrete is material, but the complaint here is that the work wasn't properly done, and the decisions made by Glasson were not properly done, and that's where they were found responsible. It was the work they did that was not proper. That's the claim. This is not a product liability case. Your Honor, this is a commercial general liability policy, and as a result, it provides general coverage to all types and kinds of insureds who are in business. Some of them manufacture products. Some of them perform work. Glasson performs work, and by any definition, this operation was the work of Glasson, and it was not their product, even though they may have supplied some materials. That doesn't make them a product supplier or manufacturer. It makes them a construction concrete contractor who performs work under subcontract agreements on real property. That's all I have. Thank you. Thank you, Mr. Lulick. Mr. Page, your rebuttal. You need to unmute your microphone, Mr. Page. I imagine you get to say that a lot these days. Thank you, Your Honor. Your Honor, the answer to the question that you were just posing to Selective's counsel is that, yes, concrete and materials furnished are within the definition of your product under the policy, and so when you look at the full blanket additional insured endorsement, it's not limited to ongoing operations. What it states is that it's going to communicate the status of additional insured to CSC with respect to liability for property damage, which we have here, and then it goes caused in whole or in part by your ongoing operations, your product, or premises owned or used by you, and so the concept of ongoing operations is only one aspect, and the idea of being caused in whole or in part by suggests that there is nothing in there that says that property damage has to occur during those ongoing operations, nor is there anything there that suggests that your product doesn't add coverage to the ongoing operations language, which it has to. There is a reason that language is in there. If it's subsumed within ongoing operations, it becomes a nullity, and so the district court correctly reasoned that this particular blanket additional insured endorsement, as phrased, is not limited to ongoing operations only and does not say it covers damages that occurred during. Now, your honor, the additional insured issue was preserved by Selective through the final judgment on appeal, but what they didn't do is after they lost the additional insured issue at the district court, they did not take an appeal, which means from a jurisdictional standpoint, we would submit, your honor, while affirming on any grounds is certainly within the discretion of this court, there are limits on that, and one of those limits is when a party does not take an appeal and then seeks to materially enlarge its own rights and lessen or minimize the rights of the other party under a judgment. Taking away additional insured status would definitely lessen the insurance injuries on a hundred projects out there that gloss and poured for them under this policy to the extent damages have occurred, and these are occurrence-based policies, so we may or may not know about those damages and claims may still come up for damages that occurred during this policy period. Now, your honor, the last thing I would say is there are other issues that are not properly before the court because they have conceded them, and that is to us, and what we would submit is that the other coverage analysis, the exclusions, everything that we wrote about the errors, they're not properly on appeal. They did not respond to them, and we've heard Selective Counsel admit there were errors made, and they want to affirm solely on the additional insured grounds, which itself is not properly before the court. Under those facts, your honor, if you couple the way Selective chose to oppose this as the insurance company under its own policy with the additional insured status that is now established conclusively, we believe the only permitted outcome is reversal and remand for entry judgment in favor of CSC. There could also be, your honor, reversal and remand for further proceedings to figure out or calculate the damages, and then we can give the district court another opportunity to go through the issues, but we certainly would submit that under all circumstances, all roads lead to reversal under these facts, and your honor, I would also ask the court to look and call the court's attention to some of the cases on ongoing operations that made clear that caused in whole or in part by does not mean occurred during, and that's the simple plain meaning, English meaning. It's not even ambiguous. That has to be construed. It just has to be enforced in favor of the insured. Thank you, your honor. Very well, counsel. We appreciate your appearance and your argument today before us. The case is submitted and we'll issue an opinion in due course.